No. 81                February 11, 2026                55

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Keith POWELL,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and First Congregational Church of Portland,
*Respondents.*

Employment Appeals Board
2024EAB0655;
A185894

Argued and submitted November 17, 2025.

Keith E. Powell argued the cause and filed the briefs *pro se*.

Joy Ellis argued the cause for respondent First Congregational United Church of Christ. Also on the brief was Foster Garvey PC.

Denise G. Fjordbeck, Assistant Attorney General, waived appearance for respondent Employment Department.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed; additionally, claimant is directed to pay $500 to the Appellate Court Services Division of the Oregon Judicial Department.

**JOYCE, J.**

Claimant seeks review of an Employment Appeals Board (EAB or board) order that reversed the decision of the Administrative Law Judge (ALJ) and denied him unemployment insurance benefits on the grounds that he voluntarily left work without good cause. We affirm. Additionally, at oral argument, employer's attorney alerted us to fabricated legal citations and quotations in claimant's briefs and asked for sanctions. In response to our order to show cause, claimant acknowledged that some of the authorities cited in his briefs were "inaccurate" and resulted from the use of online search engines and artificial intelligence (AI). We conclude that sanctions are warranted and order a monetary sanction of $500, payable to the Appellate Court Services Division of the Oregon Judicial Department.

## FABRICATED AUTHORITY

We begin with the issue of claimant's reliance on fabricated authority because it necessarily informs what authority we can consider when ruling on the merits of claimant's arguments. At oral argument, employer's counsel asked, for the first time, that the court sanction claimant on the grounds that claimant's briefs contained citations to fabricated cases and quoted material that could not be found in the cited authority. Counsel did not point the court to any particular fabricated case or quote but referenced page numbers in the claimant's briefs. Employer's counsel further informed the court that petitioner had engaged in similar conduct in separate civil suits that proceeded simultaneous to this appeal and that, when confronted in those cases, petitioner had acknowledged using AI to draft the pleadings without exercising reasonable diligence to ensure his citations and legal arguments were correct and supported by Oregon law. Employer's counsel asked that we impose sanctions on petitioner by affirming the board's decision below and awarding fees to respondent. Claimant did not address the allegations of fabricated cases and quotes during oral argument.

We re-examined petitioner's briefs and found several citations to completely fabricated cases, multiple

purported quotations that we could not find anywhere in Oregon case law, and many instances in which claimant cites cases that are unrelated to the proposition for which he cites them. We issued an order to show cause (1) why petitioner's case should not be dismissed and (2) why we should not, on our own motion, impose monetary sanctions for submitting briefs with nonexistent case law and quotations. In response to the order to show cause, claimant acknowledged that his briefs contained citations and quotations that were "inaccurate." He explained that those errors were "inadvertent and stemmed from misunderstanding the reliability of the sources used, including online search engines and AI[-]assisted legal research sites." Claimant stated that he accepted full responsibility for the errors and emphasized that he did not fabricate any authority intentionally.

He also objected to the idea that his inclusion of fabricated authorities in briefs for this case was part of a pattern of relying on fabricated authority. To support that contention, claimant clarified that, after the time for briefing had concluded in this case, he filed separate civil cases against employer. According to claimant, in those separate cases, he became aware of citation issues when employer's counsel brought attention to them. He explained that the trial court issued a "verbal admonition" and ordered him to correct the briefing, which he did. In employer's response to the order to show cause, it noted that, in the separate civil cases, a "Notice of Acknowledgment" was filed, in which claimant acknowledged his reliance on research tools that led him to cite authority that was "incorrect, inaccurately referenced, and inaccurately applied." According to employer, that notice was filed on August 27, 2025—nearly 12 weeks before oral argument in this case.

Claimant further claimed that he acted in good faith throughout the appeal and that his inaccurate citations had not prejudiced employer. Because we find that neither of those points are accurate, sanctions are appropriate.

ORCP 17 C(1), which applies to the appellate courts through ORAP 1.40(4), provides that a party who signs a document filed with the court "makes the certifications to the court identified in subsections (2) to (5) of this section,

and further certifies that the certifications are based on the person's reasonable knowledge, information and belief, formed after the making of such inquiry as is reasonable under the circumstances." Further, self-represented parties "must inform [themselves] of and comply with court rules as any other litigant." *State v. Palmer*, 35 Or App 125, 128, 580 P2d 592 (1978). When a party is found to have made a false certification under ORCP 17 C, the court may impose sanctions against them. ORCP 17 D(1).

Here, claimant was on notice that the process he used—AI-assisted or otherwise—in drafting the briefs submitted to this court could produce fabricated authority. In his response to the order to show cause, claimant stated that, after the time for briefing in this case had concluded, he became aware of fabricated citations in his briefs for separate civil cases. According to claimant, the judge in that matter gave him a verbal admonition and ordered him to correct the briefs. Claimant emphasized that that activity occurred after the time for briefing in this appeal had concluded. What claimant fails to acknowledge, however, is that while the time for briefing had ended, oral argument in this case had not yet occurred. Despite having been alerted to issues in his legal research and writing processes several months before oral argument was heard in this case, claimant did not contact this court to attempt to amend his briefs. He also made no mention of potential issues with his briefs in his opening argument and did not address employer's allegations of fabricated authority when it was his turn for rebuttal.

Claimant also fails to grapple with how his reliance on fabricated authority prejudiced employer. Claimant, concluding that employer was not prejudiced, explained that employer "did not rely upon, analyze, or respond to [claimant's] nonexistent citations." That is incorrect. Employer was the one who brought the issue to the court's attention; employer's counsel directed the court to several pages in claimant's briefs and asserted that those pages contained references to nonexistent case law and quotations. To bring the issue to the court's attention, employer's counsel had to first analyze the authority herself.

Finally, claimant ignores how his reliance on fabricated authority wasted limited judicial resources. The time taken to address claimant's reliance on fabricated authority would have been far better utilized addressing other matters. *See Ringo v. Colquhoun Design Studio, LLC*, 345 Or App 301, 304, ___ P3d ___ (2025) ("Every hour spent addressing false citations and statements of law is an hour diverted from those matters in which attorneys have supported their arguments with precedent that exists.").

Given that claimant was on notice of the potential for his research and writing process to produce fabricated authority but did not inform the court and that claimant's reliance on fabricated authority wasted the resources of employer and this court, we conclude that sanctions are warranted. Specifically, we conclude that a monetary sanction in the amount of $500 is in order.

## REVIEW OF BOARD DECISION

We turn to the merits of claimant's arguments on appeal. We do not consider the portions of claimant's briefs that relied on fabricated authority and do not consider claimant's replacement briefs, filed in response to the court's order to show cause, as he did not have leave to file them.

Claimant assigns error to the board's reversal of the ALJ's decision to award benefits to claimant. He raises four arguments: (1) the board exceeded its authority by reversing the ALJ's order without identifying legal error; (2) the board misapplied OAR 471-030-0038 and Oregon case law in determining that he did not have good cause to quit; (3) the board incorrectly concluded that he resigned to avoid discharge for misconduct; and (4) the board made improper credibility determinations. Each argument fails.

The substantive facts are uncontested and drawn from the board's findings of fact. Employer employed claimant as a business manager from May 2022 to March 2024. Claimant suffered from "extreme anxiety and childhood post-traumatic stress [disorder]" (PTSD). During his employment, claimant had a supervisor with whom he had a strained relationship; claimant believed that supervisor did not sufficiently accommodate his mental health needs and would

unreasonably deny his requests to use accrued leave. In January 2024, that supervisor retired. Claimant was put on paid leave on February 27, 2024, as employer investigated several allegations of misconduct that had purportedly occurred throughout the month of February.[1] One of the allegations related to an incident in which, as claimant described it, claimant "lost [his] temper in front of [the office manager]," "raised [his] voice in frustration * * * used a couple of expletives," and "picked up a side table adjacent to [the office manager's] desk and * * * pounded it on the floor a couple times."

Another allegation that employer was investigating was that claimant had failed to timely report the office manager's resignation—which was in response to the above-described outburst—to employer. The office manager initially sent an email to claimant, explaining she was resigning due to "the events that have transpired"—referring to claimant's outburst. Claimant asked her to send a revised letter. She sent a revised letter, which was shorter and omitted, among other things, any mention of "events that have transpired." Claimant did not immediately forward that letter to employer. After a few days passed without word of her resignation being conveyed to employer, the office manager notified a member of the personnel committee of her resignation and the reasons for it. At that point, employer met with claimant about the allegations and put him on paid administrative leave while it investigated. Claimant turned in a letter of resignation to employer. Employer stopped its investigation into the allegations when it received claimant's resignation letter; it had not decided whether to discharge claimant. Claimant ceased working for employer on March 5, 2024.

Claimant then filed for unemployment benefits. The Employment Department (department) denied his claim, concluding that claimant quit work without good cause. Claimant appealed, and the ALJ reversed the department's decision, concluding that claimant quit work for good cause and was therefore not disqualified from receiving benefits. Specifically, the ALJ found that claimant had not engaged

---

[1] Employer investigated four allegations. However, the board concluded that two of the allegations did not constitute misconduct. Claimant does not challenge those conclusions, so we describe only the two allegations relevant to the board's conclusion.

in any disqualifying misconduct. The ALJ further concluded that claimant had left work in response to a grave situation and that a reasonable and prudent person with claimant's conditions would have left work and had no reasonable alternative but to do so. Employer filed for review with the EAB. The board reversed the ALJ, concluding that claimant had voluntarily quit work without good cause because he quit to avoid what would otherwise be a potential discharge for misconduct.

Under ORS 657.176(2)(c), a claimant is disqualified from receiving unemployment benefits if the claimant "[v]oluntarily left work without good cause." In the context of ORS 657.176(2)(c), "[f]or an individual with a permanent or long-term 'physical or mental impairment' *** good cause for voluntarily leaving work is such that a reasonable and prudent person with the characteristics and qualities of such individual, would leave work." OAR 471-030-0038(4). Except for in circumstances not applicable here, the reason for the claimant's leaving "must be of such gravity that the individual has no reasonable alternative but to leave work." *Id*. However, leaving work without good cause includes "[r]esignation to avoid what would otherwise be a discharge for misconduct or potential discharge for misconduct." OAR 471-030-0038(5)(b)(F). Misconduct is "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee." OAR 471-030-0038(3)(a).

The EAB concluded that claimant did not have good cause to quit work because he voluntarily quit work to avoid what would otherwise be a potential discharge for misconduct. When reviewing the board's decision on whether a claimant had good cause to leave work, we apply a substantial evidence standard to any findings of fact. ORS 183.482(8)(c); *see also Lane County v. Employment Dept.*, 299 Or App 373, 377, 449 P3d 524 (2019). We review the board's determination of good cause to determine whether, given the board's factual findings, "the standard set out in the department's rule has been satisfied as a matter of law." *Id.* at 377.

Claimant first argues that, under ORS 183.482(7) and (8), the board was required to cite substantial new evidence to overturn the findings of the ALJ. That argument

is based on a misunderstanding of the board's standard of review, as claimant admits in his reply brief. ORS 183.482 governs the jurisdiction and procedure of review of the Oregon Court of Appeals, not those of the board.

His second argument is that the board misapplied OAR 471-030-0038 and related precedent in determining that claimant did not have good cause to quit. In making that argument, we understand claimant's main contention to be that the board should have accounted for his individual characteristics when evaluating whether he had good cause to leave work. However, the board explicitly found that claimant suffered from extreme anxiety and childhood PTSD and identified the correct legal standard, as described above, for assessing the circumstances of a claimant with such a permanent or long-term mental impairment. While the board was ultimately unpersuaded by claimant's claim that he left work due to the detrimental effect of a hostile work environment on his mental health, that is not the same as misapplying the proper standard and precedent.

In his next two arguments, claimant argues that the board incorrectly concluded that he resigned to avoid discharge for misconduct and improperly reversed credibility findings that the ALJ made. We disagree on both points.

"When there is evidence in the record both to make more probable and less probable the existence of any basic fact or inference, the board need not explain its decision to believe or rely on such evidence unless the [ALJ] has made an explicit credibility determination regarding the source of such facts or evidence." ORS 657.275(2). To the extent any explicit credibility determinations were made by the ALJ, the board explained any contrary weight it gave the evidence. Additionally, when evaluating the accounts of the office manager and claimant regarding editing the office manager's resignation letter, the ALJ concluded that the conflicting testimony of claimant and the office manager "is seen in balance." That was not an explicit credibility finding in claimant's favor, and the board was free to find differently.

And to the extent that claimant argues that the board's conclusion that claimant resigned to avoid discharge

for misconduct is not supported by substantial evidence, we have reviewed the record and the board's conclusions and reject claimant's argument without further discussion.

Affirmed; additionally, claimant is directed to pay $500 to the Appellate Court Services Division of the Oregon Judicial Department.