No. 1034　　　　December 3, 2025　　　　301

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Charles RINGO,
individually,
*Plaintiff-Appellant,*
*and*

EQUITY TRUST COMPANY,
FBO Charles Ringo #200276790,
*Plaintiff,*

*v.*

COLQUHOUN DESIGN STUDIO, LLC,
and Jennifer Cohoon,
*Defendants-Respondents.*

Deschutes County Circuit Court
23CV48069; A186670

Wells B. Ashby, Judge.

Submitted October 27, 2025.

Charles Ringo filed the briefs *pro se.*

Gabriel A. Watson and Watson Law Office PC filed the brief for respondents.

Before Egan, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.

LAGESEN, C. J.

Respondents' counsel is directed to pay $2,000 to the Appellate Court Services Division of the Oregon Judicial Department. Respondents' brief is due 28 days from the date of this opinion.

**LAGESEN, C. J.**

We face an unfortunate task: What to do when an attorney signs and submits a brief to this court that contains false case citations and a false statement of law? Respondents' attorney filed a brief littered with fabricated cases, a fabricated quotation, and fabricated substantive law. On our own motion, we struck respondents' brief and issued an order in which we directed respondents to show cause "(1) why this case should not proceed without an answering brief and (2) why this court should not, on its own motion, impose monetary sanctions for submitting a brief * * * that contained nonexistent caselaw and a nonexistent quotation." That show cause order is attached to this opinion as Appendix 1. Respondents, through their attorney, have responded. For the reasons to follow, we sanction respondents' counsel $500 for each fabricated citation and $1,000 for each false quotation or substantive statement of law, for a total of $2,000, payable to the Appellate Court Services Division of the Oregon Judicial Department. We allow respondents an opportunity, however, to submit a brief that is supported by existing law.

ORCP 17 C(3), which applies to the appellate courts by way of ORAP 1.40(4), provides that an attorney who signs a document filed with the court "certifies that the claims, defenses, and other legal positions taken in the pleading, motion or other document are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law." An attorney who signs a brief supported in full or in part by nonexistent law—law that is fabricated—thus submits a false certification to the court.

Although respondent's counsel has not acknowledged this directly, we recognize the reality that the fabricated law in respondents' brief likely resulted from the use of artificial intelligence. We also recognize that it has become common to refer to cases and principles fabricated by artificial intelligence as "hallucinations". We reject that terminology because it obscures both the nature and the seriousness of the situation we face. The word "hallucination" commonly means "perception of objects with no reality usu. arising

from disorder of the nervous system or in response to drugs (as LSD)." *Merriam-Webster's Collegiate Dictionary* 524 (10th ed 1993). Here, though, as we understand it, generative artificial intelligence is not perceiving nonexistent law as the result of a disorder. Rather, it is generating nonexistent law in accordance with its design. And that nonexistent law, time and again over the past few years, is being submitted to the courts.

This is an exceptionally grave situation for at least three reasons.

First, it is a breach of the attorney's professional duties. The Oregon State Bar has explained:

> "The most obvious way in which a lawyer could run afoul of Oregon [Rules of Professional Conduct (RPC)] 3.3 [Candor] and 4.1 [Truthfulness] is through the submission of and reliance on unverified and fictitious cases, citations, quotes, or conclusions generated by AI. Therefore, to avoid violation of Oregon RPCs 3.3 and 4.1, lawyers must review for accuracy any [generative artificial intelligence (GAI)] output discussing case-specific facts or providing a case citation, quotation, or conclusion to ensure that the GAI did not hallucinate when providing its answer, or simply get the answer wrong."

Oregon State Bar, Formal Opinion No. 2025-205, *Artificial Intelligence Tools* (February 2025) (footnote omitted).

Second, it strains our limited judicial resources. Every hour spent addressing false citations and statements of law is an hour diverted from those matters in which attorneys have supported their arguments with precedent that exists. Although artificial intelligence programs may seem to offer a shortcut for a busy attorney in an individual case, at present, they may create a long cut to justice. Every single time a lawyer relies on false authority, the court will need to take the time to address the situation to, at a minimum, ensure that the public retains confidence that the courts are not relying on fabricated law.

Third, by building and submitting arguments based on nonexistent cases and principles of law, and by failing to take the time to develop competency in the cases and

principles of law that do in fact exist, the attorney is engaging in conduct that jeopardizes the rule of law. Judicial precedent is the backbone of the rule of law. By reviewing and applying precedent to each case that comes before it, a court ensures that similarly situated parties are treated equally and that differences in treatment are justified by principled reasons. It is by studying, learning, and applying precedent, that we maintain the rule of law and develop the competency needed to maintain the rule of law. As Alexander Hamilton explained in Federalist Paper No. 78,

> "It has been frequently remarked *** that a voluminous code of laws is one of the inconveniences necessarily connected with the advantages of a free government. To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them; and it will readily be conceived from the variety of controversies which grow out of the folly and wickedness of mankind, that the records of those precedents must unavoidably swell to a very considerable bulk, and must demand long and laborious study to acquire a competent knowledge of them."

The Federalist No. 78, at 141 (R. B. Bernstein ed., 2024).

The injection of false precedent into the practice of law shakes the foundation of our judicial system. Although courts no doubt are equipped to catch false citations and statements of law, as noted above, any time we must spend verifying and directing attorneys to address a false statement of law is time away from our core mission: deciding cases that have been briefed under law that, in fact, exists.

We turn to the question of how to address this situation. We easily conclude, as other courts have, that the conduct warrants sanctions against respondents' counsel. Respondents' counsel has apologized in the response to our show cause order. We have attached the response to this opinion as Appendix 2. That apology, while appreciated, does not appear to recognize the gravity of the situation, or come close to addressing it. It does not even supply a clear explanation as to how this happened. The lack of a

forthright explanation gives the court little reason to think that the conduct will not recur, absent sanctions.

Thus, having examined the decisions of other courts facing similar circumstances, we conclude that monetary sanctions, payable by respondents' counsel, in the amount of $500 for each false citation, and $1,000 for each false quotation or statement of law, are in order. As described more fully in our show cause order, there are two fabricated case citations, and one fabricated statement of law attributed to an existing case, so we sanction respondents' counsel in the amount of $2,000. Based on our review of the decisions of other courts, we are persuaded that these sanctions are within the range of what is reasonable for this conduct, at least, where, as here, it appears to be an attorney's first time submitting fabricated authority to the court under circumstances suggesting that artificial intelligence may have played a role.[1]

As for whether the matter should proceed without a respondents' brief, given that we have stricken the brief supported with the false authority, we conclude that respondents should be given a chance to file a brief. If respondents opt to maintain their relationship with current counsel, any brief filed by current counsel must contain a certification that (1) counsel drafted the brief and did not use generative artificial intelligence to produce a draft of the brief; (2) counsel has read each case and each other source of law cited in the brief; and (3) counsel has verified that every source of law cited, quoted or paraphrased exists. In requiring this certification, the court does not intend to preclude counsel

---

[1] *See, e.g.*, *Noland v. Land of the Free, L.P.*, 114 Cal App 5th 426, ___, 336 Cal Rptr 3d 897, ___ (2025) (imposing a "conservative sanction of $10,000" payable to the "clerk of this court within 30 days," reasoning that "[a]ttorney Mostafavi's fabricated citations and erroneous statements of law have required this court to spend excessive time on this otherwise straightforward appeal"); *Shahid v. Esaam*, 376 Ga App 145, 149, 918 SE2d 198, ___ (2025) (explaining that the court would impose a $2,500 frivolous motion penalty which is the most the law allows under Court of Appeals Rule 7(e)(2)); *In re Baby Boy*, No. 4-24-1427, 2025 WL 2046315 at *22 (Ill App Ct July 21, 2025) (imposing a $1,000 penalty that "will help deter other attorneys from following in Mr. Panichi's footsteps"); *Garner v. Kadince, Inc.*, 571 P3d 812, 816 (Utah Ct App 2025) (ordering payment of donation of $1,000 to "'and Justice for all' within fourteen days *** and file proof of payment with this court").

Court decisions addressing false precedent generated by artificial intelligence are compiled at https://www.damiencharlotin.com/hallucinations/.

from using services such as Westlaw and Lexis to conduct legal research, or from using standard spelling and grammar checking functions of any word processing program. The respondents' brief is due with 28 days of the date of this order. No extensions of time will be allowed, unless respondents opt to change counsel, in which case the court is willing to consider a motion for an extension of time not to exceed 35 days.

Respondents' counsel is directed to pay $2,000 to the Appellate Court Services Division of the Oregon Judicial Department. Respondents' answering brief is due 28 days from the date of this opinion.

IN THE COURT OF APPEALS OF THE STATE OF OREGON

Charles Ringo, individually,
Plaintiff-Appellant,

and

Equity Trust Company, FBO Charles Ringo #200276790,
Plaintiff,

v.

Colquhoun Design Studio, LLC, and Jennifer Cohoon,
Defendants-Respondents.

Deschutes County Circuit Court
23CV48069

A186670

**ORDER DENYING MOTION TO FILE CORRECTED ANSWERING BRIEF**

Because of an administrative error, while the motion to file a corrected answering brief was pending for decision before the Chief Judge, an order issued on August 18, 2025, that stated incorrectly that the court had granted the motion. That order is withdrawn, and the amended brief deemed filed that date is stricken. For the reasons explained below, having fully considered the motion, the court denies it and, instead, directs respondents to show cause (1) why this appeal should not proceed without an answering brief; and (2) why this court should not impose sanctions for the submission of a filing containing fabricated legal authority.

Respondents filed a "Motion to File Corrected Answering Brief with Errata." In the motion, they represent that "[i]n the process of reformatting the original brief, two inadvertent errors occurred[.]" Respondents also submitted a letter request to file a corrected brief. In the letter, respondents state:

> "Respondents' prior answering brief contained a series of inadvertent citation errors. Specifically, the briefing cited *Scheidler v. Eider*, in four instances; and *Claus v. Columbia State Bank* in another. These citations were inserted in error; they do not correspond to the arguments and are not the intended authorities."[1]

---

[1] As noted below, respondents' brief cited *Scheidler v Ebin*, not *Scheidler v Eider*. The difference is immaterial, given that neither case exists.

ORDER DENYING MOTION TO FILE CORRECTED ANSWERING BRIEF

Respondents propose replacing what they characterize as the "errant citations" with citations to "proper authorities." Respondents identify *Russell v Nikon*, 207 Or App 266, 140 P3d 1179, *clarified on recons*, 208 Or App 606 (2006), *rev den*, 342 Or 299 (2007), and *Rymer v. Zwingli*, 240 Or App 687, 247 P3d 1246, *rev den*, 350 Or 716 (2011), as "proper authorities." Respondents also note that "on Page 12, an excerpt properly attributed to *McKeown* [v. *McKeown*, 317 Or App 616, 505 P3d 455 (2022)] mistakenly featured quotation marks. The section accurately paraphrases the Court's holding, but is not a direct quotation. In the Corrected Answer, the errant quotation marks are removed." Respondents further represent that "[e]ach argument is, and has always been, supported by proper authority. None of the corrections alters the substance of any argument."

What respondents characterize as "inadvertent citation errors" that occurred in the process of "reformatting" are citations to cases that are fabricated. For example, the brief cites to *Claus v. Columbia State Bank*, 275 Or App 113, 119, 364 P3d 644 (2015), and *Scheidler v. Ebin*, 206 Or App 495, 503, 136 P3d 60 (2006) as the sole authority for the proposition that "Oregon law does not require that the statute be pleaded by name" in support of their contention that they were not required to plead the statutory source for their claimed entitlement to attorney fees. Additionally, the brief cites *Scheidler* for several other propositions and, in one instance, includes a parenthetical summarizing *Scheidler*'s (nonexistent) holding: "See *Scheidler v. Ebin*, 206 Or App 495, 503, 136 P3d 60 (2006) (holding the statute itself provides the independent mandate for fees upon entry of a favorable award)."[2]

What respondents characterize as "errant quotation marks" are the quotation marks surrounding a block quotation. As a lead-in to that ostensible block quotation, the brief asserts: "In *McKeown v. McKeown*, 317 Or App 616, 620-21, 505 P3d 902 (2022), the Court of Appeals held unequivocally: [block quotation attributed to *McKeown*]." *McKeown*, though, does not include the words attributed to it.

Moreover, contrary to respondents' representation that the block-quoted passage "accurately paraphrases the Court's holding," that is not the case. The passage that respondents assert "accurately paraphrases the Court's holding" in *McKeown* is this:

---

[2]     A search for "*Claus v. Columbia State Bank*" returned a number of unreported opinions and orders in a federal case in the United States District Court for the District of Oregon. The citation "275 Or App 113" does not exist; the pincite to 275 Or App at 119 is a criminal case, *State v. Amsbary*, 275 Or App 115, 364 P3d 21 (2015). The parallel cite to 364 P3d 644 is a Supreme Court of Oklahoma case entitled *Gowens v. Barstow*. We have been unable to locate any case with the title "*Scheidler v. Ebin*." The citation "206 Or App 495" does not exist; the pincite to 206 Or App at 503 is to a dissolution of marriage case, *Olesberg and Olesberg*, 206 Or App 496, 136 P3d 1202 (2006), *rev den*, 342 Or 633 (2007). The parallel citation to 136 P3d 60 is for *C. A. M. Concepts, Inc. v. Gwyn*, 206 Or App 122 (2006).

"Challenges to the arbitrator's authority, such as whether the arbitrator exceeded the scope of arbitration, are not subject to review under ORS 36.425(6); rather, such arguments must be brought as a motion to vacate under ORS 36.705(1)(d)." But *McKeown* does not cite or discuss ORS 36.425 at all, let alone "unequivocally" support the proposition that certain arguments about attorney-fee awards in those arbitrations to which ORS 36.425 applies must be brought as a motion to vacate under ORS 36.705(1)(d). In fact, the processes for court-mandated arbitration under ORS 36.400 to ORS 36.425 are distinct from the arbitration processes subject to ORS 36.705(1)(d). *See Lawrence v. Bailey*, 279 Or App 356, 357 n 1, 379 P3d 863 (2016) (noting the difference in process between arbitration mandated under ORS 36.400 to ORS 36.425 and arbitration not subject to those provisions). The remedy for a party aggrieved by an arbitrator's award in court-mandated arbitration is an appeal to the circuit court for trial *de novo* under ORS 36.425; a motion to vacate under ORS 36.705 is not contemplated in the context of court-mandated arbitration governed by ORS 36.400 to ORS 36.425.

Although the court is aware that citation errors are not uncommon, and, in general, liberally permits the correction of such errors, the court is unable to accept respondents' characterization of the errors in their brief as citation errors that resulted from reformatting. Respondents have filed a brief with this court that contains fabricated authority and a fabricated block quotation, the substance of which is not supported by the case cited. In the court's view, it is one thing to permit a party to correct understandable citation errors, such as typographical errors or misidentified page numbers; it would be something entirely different to treat fabricated citations and quotations the same way. Typographical errors and misidentified page numbers can be difficult to avoid, even with the most diligent proofreading. Fabricated citations and quotations in filings with this court have no justification whatsoever.

In view of the foregoing, respondents' motion to file a corrected brief is denied, and respondents' brief, filed June 27, 2025, is stricken on the court's own motion.

Further, respondents are directed to show cause within 14 days of the date of this order (1) why this case should not proceed without an answering brief and (2) why this court should not, on its own motion, impose monetary sanctions for submitting a brief to this court that contained nonexistent caselaw and a nonexistent quotation. ORAP 1.40(4) ("Oregon Rule of Civil Procedure (ORCP) 17 is hereby adopted as a rule of appellate procedure applicable to the Supreme Court and Court of Appeals."); ORCP 17 C(1) (providing that an attorney who signs a document filed with the court "makes the certifications identified in subsections (2) to (5) of this section, and further certifies that the certifications are based on the person's reasonable knowledge, information and belief, formed after the making of such inquiry as is reasonable under the circumstances."), ORCP 17 C(3) (attorney who signs a document filed with the court "certifies that the claims, defenses, and other legal positions taken in the pleading, motion or other document are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law.").

ORDER DENYING MOTION TO FILE CORRECTED ANSWERING BRIEF

Finally, while respondents' motion to file a corrected brief has been pending before the Chief Judge, appellant filed a motion to strike and a motion for sanctions. Although that motion was filed on August 22, 2025, it was entered into ACMS on September 8, 2025, and subsequently brought to the attention of the Chief Judge on September 9, 2025. The motion to strike is denied as moot because of the court's own-motion decision to strike the answering briefs that have been filed. Respondents are directed to address appellant's request for sanctions in their response to this order.

*Erin C. Lagesen*

Erin C. Lagesen
Chief Judge
09-09-2025

c: Charles Ringo

Gabriel Aaron Watson

# APPENDIX II

mber 26, 2025 12:16 AM Appellate Court Records

IN THE COURT OF APPEALS OF THE STATE OF OREGON

CHARLES RINGO, individually
Appellant,

and

EQUITY TRUST COMPANY FBO CHARLES RINGO #200276790
Plaintiff,

v.

COLQUHOUN DESIGN STUDIO LLC and JENNIFER COHOON,
Respondents.

Deschutes County Circuit Court
23CV48069

A186670

## RESPONSE TO ORDER TO SHOW CAUSE

Appeal from the General Judgment of the Circuit Court for Deschutes County;
Honorable Wells Ashby, Judge.

Charles Ringo
61111 Minaret Circle, Bend, OR 97702
(541) 390-3006
colringo@yahoo.com
    Pro Se Appellant

Gabriel A. Watson, OSB # 190401
Watson Law Office
1822 SE Taylor Street, Portland, OR 97214
(503) 376-5446
gaw@watsonlawpc.com
    Attorney for Respondents

September 2025

3

## I.    INTRODUCTION

Pursuant to this Court's Order dated September 9, 2025, Respondent submits this response.

### A. Counsel's Unequivocal Acknowledgement of Error

Counsel for Respondent in the above referenced matter, respectfully and unequivocally acknowledges his errors, and accepts without qualification, the seriousness of the Court's issues set forth in this Court's Order to Show Cause.

The answering brief filed on June 27, 2025, contained citations to non-existent authority, and a quotation that was inaccurate. These errors are unacceptable. Counsel neglected to manually verify each citation and quotation before submission after hurriedly relying on technologies that were not fully understood and unreliable. These errors were unnecessary, unintentional, and counsel accepts full responsibility.

Counsel subsequently filed an errata letter and a revised brief based on incorrect belief that this was the proper way to address the citations after filing. Counsel acknowledges that the correct course would have been to withdraw the brief entirely. Compounding the problem, counsels focus on immediate correction led to an explanation the Court rightly found inadequate.

In recognition of the seriousness of this matter, counsel has devoted substantial time and resources to understand specifically how this failure occurred,

4

how it could have been prevented, and addressing with specific measures, the lapse in diligence that is ultimately responsible.

This explanation is not offered to minimize the error, but to demonstrate receipt of the Court's Order to Show Cause with the utmost seriousness and to demonstrate through direct actions taken, a complete commitment to ensuring this cannot, and will not, recur.

### B.    Corrective Measures Implemented to Prevent Recurrence and Ensure Full Accountability in Every Submission

To address the errors, ensure complete and accountability, and to to prevent any recurrence, Counsel and this firm have undertaken the following measures:

1. Implemented policy for manual review of every filing with any court. This policy is based on best practices determined through significant research, seeking input from others, and review of the shortcomings that precipitated these errors.

2. Completed several online training modules designed to provide familiarity and understanding of the citation check features for Westlaw.

3. Purchased subscriptions to Westlaw Precision and Co-Counsel and completed training modules in their use.

4. Evaluated secondary confirmation sources for all citations and implemented a double check system for manual review following use of

any technology-based platforms.

Counsel regrets that it took these mistakes to recognize the shortcomings in its system. These failures required the Court's intervention and imposed needless burdens on the Court, its staff, and opposing counsel. Both Appellant and Respondent, neither of whom bear responsibility for the errors, have been impacted.

Errors of this nature consume the Court's time and resources, detract from the administration of justice, and risk undermining the integrity of the legal system. In today's environment, where technology and misinformation heighten the risk of inaccuracy, counsel bears an even greater responsibility to ensure accuracy and precision. Respondent's Answering Brief fell short of that standard, for this, counsel offers a sincere and unqualified apology.

## II.    RESPONSE TO ORDER TO SHOW CAUSE

Counsel now turns directly to the Court's Order to Show Cause: (1) why this case should not proceed without an answering brief, and (2) why sanctions should not be imposed.

Each is addressed in turn, with full recognition of the gravity of the Court's concerns and in the hope that this matter may yet be resolved on its merits.

6

## A. Why this Case Should Not Proceed Without an Answering Brief

This case presents a series of important and novel questions concerning the application of fee-shifting statutes, the limits of judicial review of arbitration awards, the rights of prevailing parties, and the application of the Oregon Rules of Civil Procedure in court-mandated arbitration.

The answers to these questions matter not only to the litigants in this case, but to the trial courts, arbitrators, and future litigants across Oregon. The Court of Appeals' decisions will extend well beyond the parties named and serve as binding precedent for the states trial courts and as guidance to the bar.

To fulfill that role, the Court's decision should rest on the merits of the parties' arguments, supported by proper adversarial briefing.

## B. Why Sanctions Should Not be Imposed

Sanctions are warranted when an attorney knowingly submits false authority or acts in bad faith. That is not what occurred here. The non-existent citations were not inserted deliberately, nor was there any intent to mislead the Court or opposing counsel. They resulted from a lack of manual diligence and overreliance on platforms that counsel prone to errors that Counsel did not recognize.

Once the errors were realized, counsel took steps intended to prevent the Court from relying on them—though the method chosen was improper.

At no point was there any effort to deceive; the errors were promptly

7

acknowledged and there was an immediate attempt to correct them.

Counsel compounded the initial errors with an insufficient procedural response, but not with any attempt at to conceal or otherwise perpetuate the error.

In the wake of this embarrassing revelation, counsel and this firm have devoted significant time and resources to understanding the failure, determining why the verification processes broke down, and made substantial investments in training, process improvement, and software platforms for the purpose of avoiding errors and ultimately, supporting critical individual accountability.

As a solo practitioner, with a heavy case load, and a desire to fight for justice for all clients, there is an inherent risk of becoming overwhelmed, the temptation of relying on technology to support these well-intentioned goals is strong. While technology, and computer assisted research is a valuable tool, it is one that must be used responsibly, and with recognition that manual safeguards are necessary to prevent errors.

The review of these systems, was carried out with recognition that it should have been undertaken far earlier. The fact that it was not done sooner compromised both the firm's and counsel's work, and this has been humbly acknowledged.

None of the corrective measures is intended to minimize the seriousness of the errors. Rather, they are offered to demonstrate through action that the Court's Order is well taken and that this is an error that will not be repeated. The mistakes

8

were serious, but they were errors of diligence, but they were not intended to deceive. As the Oregon Supreme Court has recognized, ORCP 17 A requires the signer has "read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and warranted by existing law." In the instant case, Counsel's reliance on technology without sufficient manual review was unreasonable and caused needless errors, but it was not an effort to cause delay, increase the cost of litigation, or for the improper purpose of misleading the Court to gain any unfair advantage.

The imposition of sanctions in this instance would compound a matter that has already consumed extraordinary resources.

Respondent, a small business owner, has incurred costs in arbitration, in defending against two separate exceptions at the trial court, and now this appeal. The arbitrator's award of fees was nominal in comparison to those costs, and this Counsel has agreed to limit fees to that award.

Any sanctions imposed would rightfully fall entirely on counsel. As a practical matter, the financial impact of this representation—including six-months preceding arbitration, arbitration, post-arbitration litigation, and this appeal—already exceeds double the amount awarded by the arbitrator. The burden of sanctions has, in effect, already been borne by counsel's commitment to this case.

9

Respondent had no role in these mistakes and should not be denied the opportunity for a decision on the merits. Counsel fully recognizes the seriousness of counsel's error and has invested in remedial measures with time, money, and a commitment to absolute future diligence.

## III.   CONCLUSION

Counsel accepts responsibility for the errors, acknowledges the burden imposed on the Court and Appellant, and has taken comprehensive steps to ensure they are not repeated.

The mistakes were errors of diligence without any attempt to deceive. Counsel acted immediately, albeit in the incorrect way, to acknowledge the errors and take corrective action. Counsel will accept sanctions if imposed, but insists the sanctions, and any decision by this Court be tailored to avoid unfair prejudice to Respondent, who has acted properly and should not be denied a merits-based decision.

Counsel respectfully requests this Court allow filing of Respondents Corrected Answering Brief and that Appellant be afforded the opportunity to Reply.

///

///

///

DATED this 23rd day of September 2025.

Respectfully submitted,

Watson Law Office PC

/s/ Gabriel A. Watson
Gabriel A. Watson, OSB No. 190401

1822 SE Taylor St.

Portland, OR 97214

Attorney for Respondents Jennifer
Cohoon and Colquhoun Design Studios