742 March 18, 2026 No. 197

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Henry DOIBAN,
member, dba Integrity Management,
*Petitioner,*
*and*

Megan CAVES,
member,
*Respondent below,*

*v.*

OREGON LIQUOR AND CANNABIS COMMISSION,
*Respondent.*

Oregon Liquor and Cannabis Commission
OLCC2022MJL1226;
A181982

On the court's order to show cause filed November 13, 2025, petitioner's response filed November 28, 2025, and respondent's response filed December 31, 2025.

William L. Ghiorso for petitioner's response.

Dan Rayfield, Attorney General, Paul L. Smith, Interim Solicitor General, and Patricia G. Rincon, Assistant Attorney General, for respondent's response.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Petitioner's counsel is directed to pay $10,000 to the Appellate Court Services Division of the Oregon Judicial Department. Petitioner's brief is due 21 days from the date of this opinion.

**SHORR, P. J.**

Petitioner's opening brief contains fabricated case citations, purported quotations that do not exist anywhere in Oregon case law (attributed to various cases, some fabricated and others not), and inaccurate descriptions of the proposition for which certain cases stand. We issued an order to show cause in which we directed petitioner to show cause "(1) why [petitioner's] brief should not be stricken in part or in whole and (2) why this court should not, on its own motion, impose monetary sanctions for submitting a brief to this court that contains nonexistent caselaw and nonexistent quotations." That show cause order is attached to this opinion as Appendix 1. For the reasons explained below, we sanction petitioner's counsel $10,000. In addition, we allow petitioner the opportunity to file a replacement brief with the redactions as proposed in petitioner's counsel's response to the show cause order and as more fully described below.

In a recent decision, *Ringo v. Colquhoun Design Studio, LLC*, 345 Or App 301, 582 P3d 695 (2025), we were faced with the task of deciding what to do "when an attorney signs and submits a brief to this court that contains false case citations and a false statement of law." *Id.* at 303. Although counsel in that case did not directly acknowledge that the fabricated law in the brief resulted from the use of artificial intelligence, we recognized that that was likely the reality. *Id.* We explained that under ORCP 17 C(3), an "attorney who signs a brief supported in full or in part by nonexistent law—law that is fabricated—*** submits a false certification to the court."[1] *Id.*

We further explained that it was "an exceptionally grave situation for at least three reasons." *Id.* at 304. Those reason are that (1) "it is a breach of the attorney's professional duties," (2) "it strains our limited judicial resources," and (3) "by building and submitting arguments based on nonexistent cases and principles of law, and by failing to

_____

[1] ORCP 17 C(3) states that "[a]n attorney certifies that the claims, defenses, and other legal positions taken in the pleading, motion or other document are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law." ORCP 17 applies to the appellate courts by way of ORAP 1.40(4), which adopts it as a rule of appellate procedure.

take the time to develop competency in the cases and principles of law that do in fact exist, the attorney is engaging in conduct that jeopardizes the rule of law." *Id*. at 304-05.

We turn to the facts of the situation at hand. While the panel was preparing for oral argument on the merits of this matter, it came to the court's attention that in petitioner's opening brief there were case citations to nonexistent cases and quotations that did not exist anywhere in Oregon case law. At the beginning of the scheduled oral argument, the Presiding Judge of the panel asked petitioner's counsel for an explanation about the fabricated law contained in the brief. That questioning was followed up with the attached show cause order requesting a more detailed explanation.

Petitioner's counsel timely filed a response to the show cause order; respondent's counsel sought leave to file a response after the deadline, which we granted.[2] The following information is based on the representations of counsel contained in their responses, which we accept for the purpose of determining the sanctions. However, we do not necessarily accept all of the representations as fact.

Petitioner's counsel apologized and acknowledged that the brief fell short of the standards of his office and of the profession. Counsel also explained the circumstances surrounding the submission of the opening brief. He noted that, at the time of filing, early November 2024, he was having serious health issues that had been present for some time. He had already filed numerous motions to extend the deadline to file the brief and stated that he "had exhausted the available extensions due to previous motions to extend."[3] He delegated certain legal research tasks to staff and did not personally verify the citations and quotations prior to submitting the brief. He stated that he "relied on what [he] believed at the time to be legitimate legal authority, but later discovered was inaccurate citations found through

_____

[2] We have not attached the responses of counsel due to length; however, they are publicly accessible documents.

[3] Although counsel had filed many extensions of time, counsel had not been informed that no further time extensions would be granted for the filing of his opening brief—the record contains no such communication from the court. Regardless, we do not think that is relevant to counsel's ultimate decision to file a brief filled with fabricated citations.

an unverified search engine being used by staff for legal research" and that that "resulted in errors and inaccurate legal authority unintentionally being included throughout Appellant's Opening Brief."

Petitioner's counsel explained that his office has a clear policy and practice against using artificial intelligence (AI) to draft legal documents or conduct legal research; AI is permitted for basic administrative tasks such as creating argument outlines, organizing case notes, and transcribing conversations. For the brief in question, AI was used to create an outline of the arguments that needed to be made; however, he explained that the actual drafting of the brief, including legal analysis, arguments, and writing, was done by counsel and his staff without further AI assistance.

Counsel further explained that after creating the outline, his staff used Westlaw and Lexis to try to find supporting case law. After finding limited cases on point, his staff turned to search engines such as Google and Safari and started searching for cases on point about the particular subject matter of the case, which led to what appeared to be legitimate legal analysis—"a link that discussed Oregon case law using legal citation format and legal terminology." Counsel's staff believed that those citations were real cases from legitimate sources and copied the case citations and some of the language directly into the brief. Counsel and his staff did not verify any of those citations in Westlaw or Lexis before filing the brief. Counsel has tried but has been unable to locate the direct source again after over a year has passed from originally incorporating the case citations into the brief. Counsel reports that "if one asks Google's search engine whether many of the fabricated cases are real, it will generate a response using its artificial intelligence search engine, affirming that the fabricated case are in fact real."

Counsel represents that he and the law firm have taken steps to address the errors, ensure accountability, and prevent any recurrence. Those steps include (1) review of "all citations and authorities contained in any filing with any court" by an attorney or other qualified staff, (2) restriction of "all legal citation to only Westlaw Precision and LexisNexis," or cases that are in the Pacific Reporters or

other published and verified legal precedent, and (3) implementation of a system of increased review to allow "additional time for each pleading so that no pleading is rushed" and each is read over for completeness and accuracy.

Petitioner's counsel requests that we not impose sanctions, stating that sanctions are warranted when an attorney knowingly submits false authority or acts in bad faith, which, in his view, is not what happened here. Although we appreciate counsel's apology and explanation of how the fabricated case citations and quotations came to be in the opening brief, we have concerns about petitioner's counsel's lack of action to correct the fabricated citations and quotations until the court raised the issue.

Respondent's counsel raises at least one point that we agree is noteworthy. Petitioner's counsel asserts that there was no intentional concealment of the citation issues because he acknowledged the errors to the court at oral argument in November 2025, and attempted to demonstrate good faith compliance with obligations outlined in the rules of professional conduct. The problem with that stance, however, is that the fabricated citations were called to counsel's attention by respondent's counsel in an email dated April 3, 2025, before respondent's answering brief was filed.[4] In addition, the answering brief, filed on April 16, 2025, contains a footnote stating that there were case citations in the opening brief that "counsel has been unable to locate by name, reporter citations, or quoted text." Petitioner's counsel reportedly did not respond to the email from respondent's counsel and did not address the fabricated citations and quotations in the reply brief, or otherwise seek to correct the citations. That is, petitioner's counsel did not address the nonexistent citations and quotations in any manner for seven months until in-person questioning by the court, despite having been made aware of them. And, when given the opportunity to explain, counsel did not provide any explanation for the lack of correction during that lengthy time period.

For that reason, we conclude that petitioner's counsel minimized the gravity of the situation—at least until

---

[4] Respondent filed a declaration of counsel with the email attached as part of respondent's response to petitioner's response to the show cause order.

face-to-face with our court—and we conclude that sanctions are warranted. *See Ringo*, 345 Or App at 305-06 ("The lack of a forthright explanation gives the court little reason to think that the conduct will not recur, absent sanctions.").

In *Ringo*, we concluded that "monetary sanctions, payable by [the] respondents' counsel, in the amount of $500 for each false citation, and $1,000 for each false quotation or statement of law" were appropriate, after having examined the decisions of other courts facing similar circumstances. 345 Or App at 306. In that case, that formula resulted in a total monetary sanction of $2,000. *Id*. Here, as we explained in the show cause order, "there are at least 15 citations to cases that are fabricated" and "at least nine purported quotations—attributed to various cases, some fabricated and others not—that do not exist anywhere in Oregon case law." We also noted that petitioner "included citations to actual cases; however, there are multiple instances in which the description of the proposition for which the cases are cited is not accurate." Applying the formula we used in *Ringo*, the monetary sanctions here would be a minimum of $16,500—$500 for each of the 15 fabricated citations and $1,000 for each of the nine fabricated quotations.[5]

We conclude that under the circumstances here, we will cap the sanction at $10,000. We do so for several reasons: petitioner's counsel's response to our show cause order was due and was filed prior to the issuance of our decision in *Ringo*;[6] petitioner's counsel provided a detailed explanation of how the false citations and quotations came to be in the brief; and petitioner's counsel has acknowledged the need for and reportedly implemented new office procedures to prevent another occurrence in the future. *See Ringo*, 345 Or App at 306 (taking into account the fact that it appeared "to be an attorney's first time submitting fabricated authority to the court under circumstances suggesting that

---

[5] Given our decision to cap the monetary sanction, we have not spent additional court resources on calculating the number of incorrect propositions of law contained in the opening brief.

[6] We also recently issued an opinion in which a self-represented party, who used AI as part of his brief-drafting process, was sanctioned for submitting a brief containing fabricated cases and quotations. *Powell v. Employment Dept.*, 347 Or App 55, ___ P3d ___ (2026).

artificial intelligence may have played a role" in determining the sanctions).

A significant sanction, however, is still appropriate because counsel at least should have known, well before our decision in *Ringo*, that submitting a brief with unchecked and ultimately fabricated citations may breach an attorney's duties of professionalism, truthfulness, and candor to the court. *See Ringo*, 345 Or App at 304 ("The Oregon State Bar has explained: 'The most obvious way in which a lawyer could run afoul of Oregon [Rules of Professional Conduct (RPC)] 3.3 [Candor] and 4.1 [Truthfulness] is through the submission of and reliance on unverified and fictitious cases, citations, quotes, or conclusions generated by AI.'" (Quoting Oregon State Bar, Formal Opinion No. 2025-205, *Artificial Intelligence Tools* (February 2025) (brackets in *Ringo*).)). Here, that has cost the court and respondent's counsel substantial time and expense, pulling them and us away from other work in our justice system. Whether an attorney relies on a partner or associate for an *initial* draft of a brief or, instead, overly relies on a computer, which may be risky but perhaps not improper on its own, prior to filing, the attorney signing the *final* filed brief is certifying that the citations therein are accurate and not contrived from thin air. ORCP 17 C(3). The advent of generative AI did not change that principle although the software's unreliability and tendency to fabricate might have brought more to light the transgressions of that principle.

We are left with the decision of whether to strike all or part of petitioner's opening brief. In *Ringo*, the case was in a different posture: the fabricated citations and statements of law were in the respondents' brief, and the matter had not yet proceeded to oral argument. We had stricken the brief that was supported with the false authority and we concluded there that the respondents should be given the opportunity to file a brief. *Id.* at 306.

Here, the matter has been fully briefed, albeit with false authority, and has already been argued and taken under advisement. We are not inclined to allow petitioner to start over at this stage in the proceedings. The court has already spent a significant amount of time and resources

addressing this fabrication issue. Likewise, respondent's counsel estimates that at least 12 hours were spent on this issue. In addition, petitioner should not benefit from refiling a new opening brief at this stage—after oral argument on the merits—after having now considered our questions at argument and having seen respondent's arguments in the answering brief and at argument. At the same time, we acknowledge that striking the brief and dismissing the appeal altogether would punish the client perhaps more than counsel.

Petitioner's counsel submitted a proposed redacted brief with his response to the order to show cause and asks that he be permitted to file that as a replacement for the original brief. He requests that we "consider the Opening Brief on the merits of the arguments presented, which are supported by the factual record and established legal principles in Oregon law." In the proposed redacted version of the opening brief, petitioner's counsel appears to have redacted all of the nonexistent case law and nonexistent quotations, leaving the brief with citations to only five real Oregon cases. Although on the surface filing the proposed redacted brief might appear to be a solution to the decision we are faced with, the brief continues to be problematic because not all of the propositions for which those cases are cited are accurate.

Therefore, we will permit petitioner to file the proposed replacement brief, making all of the redactions as indicated and relying on only the five remaining cases listed in the table of authorities; however, petitioner must also revise the substance of the brief to accurately describe the law and holdings of those five cases.[7] Petitioner is not permitted to raise new arguments or otherwise redraft the brief except to correct the inaccurate description of the propositions for which the cited cases stand.

In addition, any brief filed by current counsel must contain a certification consistent with the certification we required in *Ringo*. That is, counsel must certify that

---

[7] We do not intend to require the refiling of an answering brief and will rely on the brief already filed; however, respondent may make a motion to do so, if it believes it is necessary.

> "(1) counsel drafted the brief and did not use genera-tive artificial intelligence to produce a draft of the brief; (2) counsel has read each case and each other source of law cited in the brief; and (3) counsel has verified that every source of law cited, quoted or paraphrased exists."

*Id.* at 306. As in *Ringo*, we do not intend to preclude coun-sel from using services such as Westlaw and Lexis to con-duct legal research or from using the spelling- and gram-mar-checking functions of word processing programs. The replacement opening brief must be filed within 21 days of the date of publication of this opinion. Absent emergency and entirely unforeseeable circumstances, no extensions of time will be allowed.

Petitioner's counsel is directed to pay $10,000 to the Appellate Court Services Division of the Oregon Judicial Department. Petitioner's brief is due 21 days from the date of this opinion.

# APPENDIX 1

IN THE COURT OF APPEALS OF THE STATE OF OREGON

HENRY DOIBAN, member, dba Integrity Management,
Petitioner,

and

MEGAN CAVES, member,
Respondent below,

v.

OREGON LIQUOR AND CANNABIS COMMISSION,
Respondent.

Oregon Liquor and Cannabis Commission No. OLCC2022MJL1226

Court of Appeals No. A181982

### ORDER TO SHOW CAUSE

This matter came before a panel for oral argument on November 6, 2025. At that time, the Presiding Judge of the panel informed appellant's counsel that the court had observed that there were a number of case citations and quoted material in the opening brief that do not match any Oregon cases and asked for an explanation. In response, counsel informed the court that he was aware of four, or maybe five, such citations in the brief, and that his law clerk had used a "search engine" for legal research that "we now have completely discarded." In addition, counsel stated that there was no intent for the case citations to not match the propositions for which they were cited--it was strictly a bad search engine. After additional questioning, counsel acknowledged that it had to have been more than just a search engine, as something produced and wrote the brief-- and counsel's name was on it. The Presiding Judge informed counsel that a show cause order would be forthcoming that would, in part, request a more detailed explanation regarding the fabricated authority and quotations that are contained throughout the opening brief.

The procedural background is as follows. Appellant's corrected opening brief was filed on November 15, 2024. Respondent's answering brief was filed on April 17, 2025. In the answering brief, respondent's counsel noted that "the undersigned counsel for OLCC has been unable to locate (and thus verify) several of the cases cited by [appellant] in support of his arguments. And the cases that she has been able to locate do not support the propositions asserted by [appellant]." The answering brief also contains a footnote which lists five case names and citations as examples of the cases

ORDER TO SHOW CAUSE

that "counsel has been unable to locate by name, reporter citations, or quoted text." Appellant's reply brief was filed on May 7, 2025; it does not contain any response to the case citation issue that was noted in the answering brief. The matter was scheduled for oral argument, which was held on November 6.

We have examined the opening brief. As an initial matter, we note that the Table of Authorities is not complete in that it does not list all of the cases that are included in the body of the brief. *See* ORAP 5.35 (requiring an index of all authorities referred to along with the corresponding page numbers in the brief). More importantly, there are at least 15 citations to cases that are fabricated, including *OLCC v. Edwards*, 293 Or App 1, 426 P3d 219 (2018); *State ex rel Juv. Dept. v. D. J.*, 363 Or 449, 424 P3d 694 (2018); and *Walling v. Walling*, 370 Or 56, 425 P3d 468 (2019). In addition, there are at least nine purported quotations--attributed to various cases, some fabricated and others not-- that do not exist anywhere in Oregon case law. Further, appellant included citations to actual cases; however, there are multiple instances in which the description of the proposition for which the cases are cited is not accurate.

For example, appellant refers to *Union Lumber Co. v. Miller*, 360 Or 767, 388 P3d 327 (2017), multiple times and describes it as a "seminal decision" by the Supreme Court in conjunction with the development of a comprehensive framework for evaluating requests for relief from default in administrative proceedings. The brief states that *Union Lumber Co.*, 360 Or at 777-78, establishes three primary considerations, which are spelled out, and that that legal framework for relief from a default must be applied with particular care in license revocation proceedings. However, *Union Lumber Co.* is a case about an action for breach of contract and unjust enrichment and the issue before the court was a motion to set aside a judgment under ORCP 71 B(1) on the ground of excusable neglect and mistake. *Union Lumber Co.* does not establish the legal framework for relief from default in administrative proceedings as claimed by appellant.

An example of appellant's citation to a case that is fabricated is *Walling v. Walling*, 370 Or 56, 425 P3d 468 (2019). We have found no Oregon case by that name and the citations to the reporters do not exist. Appellant describes *Walling* as "[t]he Oregon Supreme Court's landmark decision" that states, "Default judgments are disfavored precisely because they conflict with the court's truth-seeking function and the preference for resolution of disputes upon their merits." Not only does that purported quoted material not appear in a case by the name of *Walling*, which, as noted, does not exist, it does not appear in any Oregon case.

It is difficult for the court to believe that the above-described errors were caused by a bad search engine.

In view the of the foregoing, appellant is directed to show cause within 14 days of the date of this order (1) why appellant's brief should not be stricken in part or in whole and (2) why this court should not, on its own motion, impose monetary sanctions for submitting a brief to this court that contains nonexistent caselaw and nonexistent

ORDER TO SHOW CAUSE

quotations.[1] ORAP 1.40(4) ("Oregon Rule of Civil Procedure (ORCP) 17 is hereby adopted as a rule of appellate procedure applicable to the Supreme Court and Court of appeals."); ORCP 17 C(1) (providing that an attorney who signs a document filed with the court "makes the certifications identified in subsections (2) to (5) of this section, and further certifies that the certifications are based on the person's reasonable knowledge, information and belief, formed after the making of such inquiry as is reasonable under the circumstances."); ORCP 17 C(3) (attorney who signs a document filed with the court "certifies that the claims, defenses, and other legal positions taken in the pleading, motion or other document are warranted by exiting law or by a nonfrivilous argument for the extension, modification or reversal of existing law or the establishment of new law."). As part of the response, appellant is further directed to explain who drafted the brief, to explain again how the brief and citations were generated, and to disclose whether all, part, or none of the brief was generated by some form of artificial intelligence.

Scott A. Shorr
Presiding Judge
11/13/2025

c:   William L Ghiorso

     Patricia G Rincon

---

[1]     Respondent Oregon Liquor and Cannabis Commission is not required to respond to this order, but may do so.

ORDER TO SHOW CAUSE