No. 304 April 22, 2026 505

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Carol L. WILLIAMS,
*Plaintiff-Appellant,*

*v.*

Tracy HONL,
*Defendant-Respondent.*

Umatilla County Circuit Court
24CV10614; A186656

Robert W. Collins, Jr., Judge.

On Order Denying Motion to File Amended Brief, Striking Opening Brief, and Directing Appellant to Show Cause why the Appeal Should not Be Dismissed and Sanctions Imposed, dated January 5, 2026.

Abby Shearer, for appellant.

Jill O. Gibson for respondent.

Before Egan, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.

LAGESEN, C. J.

Attorney fees in the amount of $8,044.25 awarded to respondent, payable by appellant's attorneys. Appellant's amended opening brief is due within 28 days, and respondent's amended answering brief is due within 49 days following the filing of the amended opening brief.

**LAGESEN, C. J.**

This matter is the latest to lengthen a recent series of cases requiring us to address the submission of fabricated law to the court. *Doiban v. OLCC*, 347 Or App 742, ___ P3d ___ (2026); *Powell v. Employment Dept.*, 347 Or App 55 ___ P3d ___ (2026); *Ringo v. Colquhoun Design Studio, LLC*, 345 Or App 301, 582 P3d 695 (2025). It is, however, the first case to present the option of awarding attorney fees as a sanction instead of—or in addition to—sanctions payable to the court.[1] For the reasons that follow, we exercise our authority under ORAP 1.40 and ORCP 17 to sanction the attorneys for appellant by requiring them to pay the $8,044.25 in attorney fees incurred by respondent in responding to the brief containing the fabricated authority and in responding to the court's show cause order addressing the fabricated authority. Because this sanction compensates respondent for the harm caused by appellant's lawyer's conduct, because it is a significant sanction, and because we are persuaded the conduct is unlikely to recur, we do not order additional sanctions payable to the court in this instance. We also decline to order dismissal of the appeal as a sanction and, instead, permit appellant to file an amended opening brief under the conditions specified below.

As is usual in an appeal, appellant filed an opening brief and respondent filed an answering brief. The case then deviated from the usual course. Appellant, having reviewed the answering brief, moved to file an amended opening brief. The motion represented that "[t]he Amended Opening Brief does not change the assignments of error, issues presented, or relief sought. It corrects the legal standard and citations in light of Respondent's answering brief." The motion represented that respondent would not be prejudiced by the filing of the amended brief and included a proposed amended brief. The motion did not provide any further explanation of what had led to the need for correction, or why the court should permit the unusual relief of allowing an appellant to file a new brief after a responsive brief had been filed.

---

[1] In the previous cases involving the submission of fabricated law, we have not considered attorney fees as a sanction either because of the self-represented status of the party burdened by the opposing party's use of fabricated law (a self-represented party is not eligible to recover attorney fees), or because the opposing party did not request attorney fees.

On review of the motion, the brief on file, and respondent's answering brief, the court, through the Chief Judge, determined that the brief on file "contain[ed] fabricated quotations and propositions of law falsely attributed to existing cases." The court further determined that respondent had been prejudiced by having to respond to a brief with fabricated authority, and that the proposed amended brief appeared to be substantially rewritten in a way that would prejudice respondent by requiring respondent to address a new brief. As a result, the court issued an order that denied the motion to file an amended brief, struck the brief on file, and directed the appellant to show cause why the appeal should not be dismissed and sanctions imposed. This opinion includes an appendix with a chart detailing some (although not necessarily all) of the issues identified with appellant's brief, the answering brief's response to those issues, the approach taken by the proposed amended brief, and this court's assessment of the issues with the opening brief and proposed amended brief.

In response to the order to show cause, one of appellant's attorneys, Shearer, took responsibility for the problematic brief and acknowledged that "generative artificial intelligence was used as a research and drafting aid, and quotations and legal propositions were not independently verified against the cited cases before filing. That failure resulted in inaccurate attributions of law." Appellant's attorney represented that "[s]teps have been taken to ensure that similar errors do not recur," and that "generative artificial intelligence will not be used for legal research, citation, quotation, or paraphrasing in court submissions." Appellant's attorney requested that the harm caused by the attorney's conduct be addressed by means other than dismissal.

Respondent, in turn, urged that the appeal be dismissed or, if not, that the court award the attorney fees incurred by respondent in preparing the respondent's brief and addressing the court's order regarding the fabricated law. With respect to the fees for the brief, respondent noted that the "amount is more than it would have been if fabricated quotes and incorrect propositions of law had not

been included in Appellant's opening brief" because the inclusion of those things "result in billable time devoted to searching for the nonexistent quotations, re-reading and re-evaluating cases searching for the incorrectly stated propositions of law, and additional research to confirm Respondent's understanding of the relevant law." Respondent "acknowledged that this would be a difficult result for Appellant, but given the options before the Court, an option that does not prejudice the Respondent should be chosen."

On receipt of the parties' responses, the court, through the Chief Judge, referred the matter to the Motions Department for resolution by way of precedential opinion issued by a three-judge panel because of the important and concerningly recurrent nature of the issue.

As an initial matter, the professional choice for appellant's attorney to have made upon receiving the respondent's brief would have been to disclose to the court immediately that the opening brief contained fabricated law resulting from the use of generative artificial intelligence, and to have requested leave to file a rewritten brief. The motion that appellant's attorney filed lacked the candor that we expect from lawyers. *See* RPC 3.3 (discussing a lawyer's duty of candor toward a tribunal). Beyond that, as noted in the court's show cause order, the proposed amended brief itself was also problematic, so the proposed fix risked exacerbating the problem, had the court not rejected it. We nevertheless appreciate the explicit, if belated, acknowledgment by appellant's attorney in response to the court's order that her use of generative artificial intelligence led to this predicament. The trend of submitting briefs containing fabricated law is a recent one, and lawyers' willingness to identify the causal role of generative artificial intelligence is critical as we assess how the use of that technology squares with our obligation to maintain the rule of law. As we have previously noted, the situation is grave: "The injection of false precedent into the practice of law shakes the foundation of our judicial system." *Ringo*, 345 Or App at 305. Documenting the role that generative artificial intelligence plays in the fabrication of law better equips us,

as a profession, to evaluate whether the benefits of using a technology that fabricates legal authority substantially outweigh the significant risks.[2]

We also decline to dismiss the appeal. There is no indication that appellant herself played a role in encouraging the use of the fabricated authority and we are not persuaded that appellant herself should bear the consequences of her attorney's reliance on generative artificial intelligence lacking adequate safeguards. Because we have stricken the opening brief, we permit appellant to file an amended opening brief within 28 days of the date of this opinion. If the brief is submitted by the same attorney responsible for the stricken brief, it must contain a certification that (1) counsel drafted the brief and did not use generative artificial intelligence to draft the brief; (2) counsel has read each case and each other source of law cited in the brief; and (3) counsel has verified that every source of law cited, quoted, or paraphrased exists. This certification required does not preclude counsel from using services such as Westlaw and Lexis to conduct legal research, or from using standard spelling and grammar functions of any word processing program. *See Ringo*, 345 Or App at 306-07 (requiring same certification from attorney who filed brief containing fabricated law). Because the new opening brief filed by appellant will require respondent to file a new answering brief, in accordance with ORAP 5.80(2), respondent may file that amended answering brief within

---

[2] Appellant's attorney did not identify what generative artificial intelligence product she used. So that Oregon lawyers are not misled into thinking that generative artificial intelligence products by established legal providers are necessarily incapable of creating the types of problems with the opening brief and the proposed amended brief, we note that, whatever their source in this case, they resemble those addressed in a recent opinion by the United States Court of Appeals for the Sixth Circuit, *United States v. Farris*, ___ F4th ___, 2026 WL 915082, *3 (6th Cir 2026) ("That Howe's briefs cited real legal authorities—as opposed to 'hallucinations' featuring fictitious cases—does not absolve him. gHowe's failure to verify the artificial-intelligence output still resulted in the submission of false quotations and misleading legal arguments to this Court." (citation omitted)). In *Farris*, the attorney explained that the fabricated law resulted from the use of Westlaw's CoCounsel program. *Id*. at *2. This caused the court to note the importance a lawyer understanding how generative artificial intelligence programs operate before using them "even when new tools are sponsored by trusted legal technology providers." *Id*. We agree with the Sixth Circuit's caution and restate it for that reason. Regardless of provider, a generative artificial intelligence program is not, itself, a lawyer. It is important to keep that in mind if using one to do a lawyer's work.

49 days of the date that appellant files the amended opening brief.

Finally, we turn to monetary sanctions. As noted, respondent has requested that we award the attorney fees incurred for the work of respondent's counsel in responding to the stricken opening brief and the court's show cause order. We agree that an award of attorney fees to respondent payable by appellant's attorneys is an appropriate sanction.

As we previously have held, ORAP 1.40 and ORCP 17 authorize us to impose sanctions for the submission of briefs containing fabricated law. *Ringo*, 345 Or App at 303. That is because an attorney who signs a brief certifies that it is supported by existing law, a certification that is false when the brief contains nonexistent law that has been fabricated. One appropriate sanction is an award of attorney fees "sufficient to reimburse the moving party for attorney fees and other expenses incurred by reason of the false certification[.]" ORCP 17 D(4).

Here, respondent has requested that we award all attorney fees incurred in responding to appellant's problematic brief and the related show cause order. Having declined to dismiss the appeal, we agree with that proposed sanction. The brief filed by appellant did not contain merely a few problematic citations among mostly valid ones, such that the problem can be fixed by striking a few sentences or citations and proceeding on a revised opening brief and the respondent's existing brief. The problems permeated the brief. Six of the nine cases cited in the opening brief were cited either for nonexistent quotations or propositions of law not plausibly attributable to them. Redressing the problem will require appellant to submit a substantially rewritten brief. That, in turn, will require respondent to submit a new brief.

Although the time taken from respondent is irretrievable, it is compensable. Under these circumstances, it would be inequitable for respondent to bear both the expense of responding to the arguments raised in the problematic brief and the expense of responding to a replacement brief. *See Shahid v. Esaam*, 376 Ga App 145, 147, 918 SE2d 198 (2025) (The attorney's "use of fictitious cases and citations

has deprived the opposing party of the opportunity to appropriately respond to [the] arguments."); *Mattox v. Prod. Innovations Research, LLC*, 807 F Supp 3d 1341, 1352-53 (ED Okla 2025) (after striking offending filings from the record, awarding attorney fees to compensate opposing counsel for the "burden unjustly borne by opposing counsel in responding to pleadings that no longer exist" in addition to monetary sanctions totaling $6,000 payable to the court); *Ferris v. Amazon.com Servs., LLC*, 778 F Supp 3d 879, 880-81 (ND Miss 2025) ("While one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true. As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system."). Therefore, it is appropriate to require appellant's attorneys to pay respondent's reasonable attorney fees in responding to the stricken opening brief and the show cause order.

In this case, respondent has requested attorney fees in the amount of $8,044.25 for approximately 23 hours of work by respondent's attorney and her assistant.[3] The request is supported by a detailed billing statement. The hours billed include the hours respondent spent drafting the answering brief, which is the majority of the time; only about 3.5 hours were spent responding to the show cause order and appellant's request to file an amended opening brief. The work of 23 hours is reasonable, as are the respective hourly rates. Appellant's attorney has not responded in opposition to respondent's request for attorney fees; as noted previously, appellant's sole argument in addressing the show cause order, which had proposed attorney fees as a potential sanction, is that the court not dismiss the appeal.

The remaining question is whether to impose additional sanctions to redress the harm to the court. As we observed in *Ringo*, the submission of fabricated authority "strains our limited judicial resources. Every hour spent addressing false citations and statements of law is an hour diverted from those matters in which attorneys have

---

[3] The request was for a slightly higher amount that we have adjusted to exclude the first appearance fee which was incorrectly included in an entry for billed time and also to account for what appears to be an arithmetical error.

supported their arguments with precedent that exists." *Ringo*, 345 Or App at 304. An attorney's decision to rely on generative artificial intelligence without adequate safeguards thus impedes the administration of justice in a concrete way. It delays the resolution of an individual case and eats time that could be applied to the resolution of other people's cases. Despite that harm, we decline to award additional sanctions here. The award of attorney fees is a significant one, and appellant's attorney's response to the court's order gives the court confidence that the conduct will not recur.

Finally, so that the clear does not become cloudy, we state the obvious: Using generative artificial intelligence to generate legal briefs and then simply cite-checking them bears no resemblance to the competent practice of law. *See Mattox*, 807 F Supp 3d at 1353 ("When lawyers trade reflection for automation, they surrender the very quality that makes their words worthy of belief."). Although cite checking is, of course, an important part of producing reliable, competent briefs, it is not the type of work that requires a law degree. Law is a profession:

> "a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service—see LEARNED PROFESSION."

*Webster's Third New Int'l Dictionary* 1811 (unabridged ed 2002) (defining "profession"). As veteran Oregon lawyers have advised new lawyers for years, an Oregon lawyer develops and maintains the specialized knowledge required of the profession by reading the cases relevant to the lawyer's practice in the Advance Sheets (in print or on the appellate courts' website) and discussing them with colleagues. A person who uses generative artificial intelligence in lieu of reading, writing, and talking about the law—the very processes by which a lawyer acquires and

retains the specialized knowledge and skills required of the profession—risks losing claim to the title of lawyer.

Respondent is awarded $8,044.25 in attorney fees, payable by appellant's attorneys. ORCP 17 D(1) ("A law firm is jointly liable for any sanction imposed against a partner, associate or employee of the firm, unless the court determines that joint liability would be unjust under the circumstances."). Appellant's amended opening brief is due within 28 days of the date of this opinion. If the brief is filed by the attorney who prepared the previous brief, it shall contain the certification discussed above. Respondent's amended brief is due 49 days after the filing of appellant's amended opening brief.

# APPENDIX

| Stricken opening brief | Answering brief | Proposed, amended opening brief | Court's January 6 order |
|---|---|---|---|
| *Neumann v. Liles*, 358 Or 706, 720, 369 P3d 1117 (2016): determination of whether claim arises out of public issue protected by special motion to strike under anti-SLAPP is reviewed *de novo* | "*Neumann* does not state that the review is de novo. In fact, *Neumann* does not even address standards of review"; correct standard of review is for legal error. | <u>Different cite:</u> *Neumann v. Liles*, 261 Or App 567, 572-73, 323 P3d 521 (2014) <u>Changed brief</u>: It "is a question of law reviewed for legal error." | |
| *Staten v. Steel*, 222 Or App 17, 32, 191 P3d 778 (2008): Quote that "private, employment-related disputes" are not matters of public interest, even though the employer was a public body | "*Staten* does not say this. In fact, *Staten* does not even involve workplace or employment matters[.]" | <u>Changed brief:</u> Removes quote; reframes as broad public/private distinction. | <u>Order:</u> That is "not a plausible reading of *Staten*, which focused on the issue of reviewability * * *." |
| *Tubra v. Cooke*, 233 Or App 339, 225 P3d 862 (2010): Quote about "information received from others" and employer's claim surviving anti-SLAPP motion | n/a | <u>Omitted</u> | <u>Order:</u> Quote does not exist; case did not involve anti-SLAPP |

| *Handy v. Lane County*, 360 Or 605, 385 P3d 1016 (2016): Emphasized that the statements there involved transparency and accountability in government | n/a | <u>Omitted</u> | <u>Order:</u> "That is not a plausible reading of *Handy*, which contained no such emphasis." |
|---|---|---|---|
| **Stricken opening brief** | **Answering brief** | **Proposed, amended opening brief** | **Court's January 6 order** |
| *Davoodian v. Rivera*, 327 Or App 197, 200-01, 535 P3d 309 (2023) | n/a | <u>Omitted</u> | |
| *Brown v. Gatti*, 341 Or 452, 458, 145 P3d 130 (2006): Accusations of dishonesty or misconduct in one's professional or political capacity are defamatory per se | n/a | <u>Omitted</u> | |
| *Mullen v. Meredith Corp.*, 271 Or App 698, 704, 353 P3d 598 (2015): Private, personnel disputes versus matters of public interest | "*Mullen* has nothing to do with a personnel dispute." | <u>Changed brief:</u> Reframes as public discussion versus targeted individual. | |