*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOYCE BARBER,

        Plaintiff-Appellant,

v

LAWRENCE J. MORAWA, MD,

        Defendant-Appellee,

and

ASCENSION PROVIDENCE HOSPITAL,

        Defendant

FOR PUBLICATION
June 17, 2026
2:00 PM

No. 374773
Oakland Circuit Court
LC No. 2023-199637-NH

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

ACKERMAN, J.

Plaintiff raises a straightforward challenge to the denial of her motion for a new trial or evidentiary hearing. But in presenting that challenge, plaintiff's counsel created a separate problem by repeatedly relying on fabricated and unsupported legal authority.

The merits issue is easily resolved. Plaintiff sought a new trial or evidentiary hearing based on alleged juror misconduct and irregularities, but the allegations depended on facts outside the record and were not supported by valid affidavits. Even setting aside this procedural defect, plaintiff also failed to show that any alleged irregularity affected her substantial rights. The trial court therefore did not abuse its discretion by denying relief.

The briefing issue requires separate attention. In the trial court and again on appeal, plaintiff's counsel relied on artificial intelligence without adequate verification, leading him to cite nonexistent cases and invoke real cases for propositions they do not support, even after defendant identified the defects. Counsel later acknowledged in a "Notice of Correction" that artificial intelligence had generated "plausible but fabricated case citations—a known limitation of such

-1-

tools." Yet that notice, also prepared with the assistance of artificial intelligence, attributed quotations and legal propositions to cases that did not contain them.

We affirm the trial court's order denying plaintiff's motion for a new trial or evidentiary hearing. But because counsel's repeated submission of fabricated and unsupported authority grossly disregarded the requirements of fair presentation and violated the duty of reasonable inquiry, we remand for a determination of the actual damages and expenses that defendant incurred because of this appeal, which shall be payable by plaintiff's counsel personally.

## I. BACKGROUND

This case arises from a hip replacement surgery that defendant, an orthopedic surgeon, performed on plaintiff at Ascension Providence Hospital in October 2020. Plaintiff sued, asserting claims of medical malpractice and negligence related to the surgery.

After a five-day trial, the jury found that defendant was not negligent. The trial court then polled the jurors. Jurors 1, 2, 3, 4, and 5 confirmed that the verdict accurately reflected their votes. Juror 7, the foreperson, answered that it did not. Because five jurors agreed, the verdict was sufficient in this civil action. See MCL 600.1352; MCR 2.514(A). After the poll, defense counsel asked whether the attorneys could speak with the jurors. The trial court agreed to permit a discussion if the jurors were willing. The court then spoke with the jurors and participated in an off-the-record discussion with the jurors and trial counsel.

Plaintiff later moved for a new trial or an evidentiary hearing. She alleged that the verdict was tainted by juror misconduct, improper extraneous influences, and irregularities in the deliberative process. Specifically, plaintiff asserted that, during the post-verdict discussion, one juror admitted consulting his mother, who had undergone hip surgery, about x-rays and her opinion of the case; that another juror admitted conducting independent online research about the size of a 25-millimeter screw; that the foreperson said he wanted to review trial exhibits further before voting but other jurors prevented him from doing so; and that alternate jurors remained in the jury room during deliberations and favored the defense.

Plaintiff relied primarily on criminal caselaw and constitutional principles, contending that she was entitled to a new trial because the verdict was "influenced by improper extraneous evidence and a compromised deliberation process." To support the factual assertions in the motion, plaintiff purported to attach affidavits from her trial attorneys. Those affidavits, however, were not notarized.

Defendant disputed plaintiff's account of the post-verdict discussion and supported his response with notarized affidavits from defense counsel. According to defendant, no juror stated that he had consulted his mother about x-rays or evidence in the case; one juror merely mentioned that his mother had previously undergone hip replacement surgery. Defendant also asserted that no juror admitted conducting independent research regarding the screw; one juror commented only that the 25-millimeter screw looked large on the x-ray admitted into evidence but was, in fact, rather small. Defendant further maintained that the foreperson did not say the other jurors prevented him from reviewing exhibits. Instead, the foreperson "indicated that he was 90% for the defense" when the final vote was taken and that, although he had wanted to review additional

exhibits, he realized his vote was unnecessary because the other jurors were already in agreement. Finally, defendant asserted that the alternate jurors were dismissed after being selected as alternates and did not participate in deliberations.

Defendant also observed that plaintiff's motion relied on two nonexistent criminal cases and otherwise cited criminal authority and constitutional protections inapplicable to this civil action. Defendant requested sanctions.

In reply, plaintiff acknowledged that "an innocent and inadvertent mistake was made" regarding the citations to nonexistent cases. Plaintiff nevertheless continued to rely primarily on criminal authority.

At the hearing on plaintiff's motion, the trial court rejected plaintiff's characterization of the post-verdict discussion, finding that its own recollection of the off-the-record conversation was consistent with defendant's account rather than plaintiff's. The court therefore denied plaintiff's motion for a new trial or evidentiary hearing. This appeal followed.

## II. MOTION FOR NEW TRIAL OR EVIDENTIARY HEARING

Turning first to the merits, the trial court did not abuse its discretion in denying plaintiff's motion for a new trial or evidentiary hearing. Plaintiff's motion relied on factual allegations outside the record that were not supported by valid affidavits, and even if the affidavits were valid, plaintiff did not show that any alleged misconduct or irregularity materially affected her substantial rights.

In civil cases, motions for a new trial are governed by MCR 2.611, and we review a trial court's decision on a motion for a new trial for an abuse of discretion. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or when it commits an error of law. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

Under MCR 2.611, a trial court may grant a new trial when a party's substantial rights were materially affected by an "[i]rregularity in the proceedings of the court, jury, or prevailing party . . . which denied the moving party a fair trial," MCR 2.611(A)(1)(a), or "[m]isconduct of the jury or of the prevailing party," MCR 2.611(A)(1)(b). When "the facts stated in the motion for a new trial . . . do not appear on the record of the action, the motion must be supported by affidavit, which must be filed and served with the motion." MCR 2.611(D)(1).

That affidavit requirement matters here because plaintiff's motion depended almost entirely on alleged statements made during an off-the-record post-verdict discussion. Those facts did not appear in the record, so plaintiff was required to support the motion with affidavits. But the affidavits plaintiff submitted were not notarized and were therefore invalid. See *Sherry v East Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011) ("Because an affidavit lacking notarization is invalid, a trial court need not consider it.").

Plaintiff argued in the trial court that the unnotarized affidavits had "the same effect as a sworn declaration," citing § 2184 of the Uniform Unsworn Foreign Declarations Act,

MCL 600.2181 *et seq.* But that act does not apply to declarations made within the United States. See MCL 600.2183 ("This chapter does not apply to a declaration by a declarant who is physically located on property that is within the boundaries of the United States . . . ."). Plaintiff therefore offered no basis to conclude that the unnotarized statements of her trial attorneys satisfied MCR 2.611(D)(1).

On appeal, plaintiff contends that the affidavits were offered only "to trigger the [evidentiary] hearing—not to prove medical facts—and satisfy MCR 2.119(B)(1)." That distinction does not assist plaintiff. When the asserted facts do not appear in the record, the rule provides that the motion "*must* be supported by affidavit." MCR 2.611(D)(1) (emphasis added). The rule does not contain a lesser affidavit requirement for motions seeking an evidentiary hearing as a step toward a new trial. Plaintiff cites no authority holding that an unnotarized affidavit satisfies that requirement and has therefore abandoned the argument. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008) (deeming an argument abandoned when the litigant failed to cite supporting authority). But it is likely that plaintiff cites no such authority because the plain text of the rule, combined with *Sherry*'s holding that an unnotarized affidavit is invalid, strongly suggests that no such authority could exist.

Even if plaintiff had properly supported the factual allegations in her motion, she failed to allege facts that would entitle her to relief. A new trial may be granted under MCR 2.611 only when the moving party's substantial rights were materially affected. "An error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017) (cleaned up).

Plaintiff does not explain how the alleged misconduct or irregularities affected the outcome of the trial. Instead, plaintiff relies on the premise that juror misconduct "creat[es] a presumption of prejudice." In support, plaintiff invokes *Remmer v United States*, 347 US 227, 229; 74 S Ct 450; 98 L Ed 654 (1954). But *Remmer* expressly concerned criminal proceedings, holding that "[*i*]*n a criminal case*, any private communication, contact, or tampering directly or indirectly, with a juror during a trial . . . is, for obvious reasons, deemed presumptively prejudicial." *Id.* (emphasis added). This is not a criminal case. Plaintiff's reliance on the Sixth Amendment and Const 1963, art 1, § 20, is similarly misplaced because those provisions apply to criminal prosecutions, not civil medical malpractice actions.

Plaintiff has identified no non-criminal authority establishing a presumption of prejudice under these circumstances. Nor has plaintiff shown that the trial court's refusal to conduct an evidentiary hearing was an abuse of discretion. Plaintiff's allegations were unsupported by valid affidavits, contradicted by defendant's notarized affidavits, and rejected by the trial court based on its own recollection of the post-verdict discussion in which it participated. On this record, plaintiff failed to demonstrate that the alleged misconduct or irregularities materially affected her substantial rights. The trial court thus did not abuse its discretion by denying plaintiff's motion for a new trial or evidentiary hearing.

## III. SANCTIONS

### A. COUNSEL'S CONDUCT

We must also address significant concerns about plaintiff's counsel's repeated submission of fabricated and unsupported legal authority in the trial court and in this Court.

Counsel first cited fabricated authority in plaintiff's December 2024 motion for a protective order, relying on "*People v. O'Keefe*, 2019 WL 6907273," regarding the exclusion of cumulative expert testimony. Defendant identified the fabricated citation in response. Counsel then sought leave to file a reply brief, but the proposed reply did not acknowledge or correct the citation.

The problem recurred two months later. In plaintiff's February 2025 motion seeking a new trial or evidentiary hearing based on juror misconduct, counsel cited two nonexistent criminal cases, "*People v. Stubblefield*, 197 Mich. App. 365 (1992)," and "*People v. Royster*, 291 Mich. App. 508 (2011)." Defendant again identified the fabricated citations, observed that this was not the first time plaintiff had cited nonexistent authority, and sought sanctions under MCR 1.109 and MCL 600.2591. In reply, counsel acknowledged that "an innocent and inadvertent mistake was made regarding the citation of *Stubblefield* and *Royster*." Yet counsel continued to rely primarily on criminal authority and related constitutional principles in support of a motion arising from a civil medical malpractice trial.

The same pattern continued on appeal. In plaintiff's brief in this Court, counsel cited "*Meyer v. Walker*, 241 Mich. App. 295 (2000)," a case that does not exist, for propositions concerning presumed prejudice and the standard of review. Counsel also repeatedly cited real authorities for propositions they do not support. For example, counsel cited *People v Budzyn*, 456 Mich 77; 566 NW2d 229 (1997), for the proposition that a "trial court's handling of juror misconduct allegations is reviewed for an abuse of discretion," but *Budzyn* states no such standard. Counsel similarly cited *People v Miller*, 482 Mich 540; 759 NW2d 850 (2008), for the proposition that a "trial court's management of trial procedures, including exhibit availability and deliberation duration" is reviewed for an abuse of discretion, but *Miller* addressed neither issue. In short, most of the citations in plaintiff's initial brief on appeal do not support the propositions for which they are offered.

Defendant again identified the deficiencies in his responsive brief, including the nonexistent citation to *Meyer*. Yet plaintiff's counsel then filed a reply brief addressing the merits without acknowledging the fabricated case or correcting the unsupported legal assertions in the initial brief.

Eight months later—and less than three weeks before scheduled oral argument—plaintiff's counsel filed a "Notice of Correction." In it, counsel conceded that *Meyer* is not a real case and acknowledged that other authorities cited in plaintiff's brief did not support the propositions for which they were offered. Counsel accepted "full responsibility" for the citation errors and attributed them to "over-reliance on artificial intelligence research tools" that generated "plausible but fabricated case citations—a known limitation of such tools." Counsel also represented that he had "since implemented verification protocols to prevent recurrence."

-5-

But the Notice of Correction did not cure the problem. Counsel purported to substitute valid authorities for the fabricated and unsupported ones, but those substitute authorities still did not support the propositions for which counsel offered them. Most notably, counsel attributed to *Miller*, 482 Mich at 548-552, quotations concerning "extraneous prejudicial information" and "outside influence." Those phrases do not appear in *Miller*. They appear instead in MRE 606(b)(2), which *Miller* does not discuss. At oral argument, counsel acknowledged that he used artificial intelligence to prepare the Notice of Correction.

This issue is therefore anything but an isolated mistake. By the time counsel filed plaintiff's brief on appeal, he had already been told twice that his trial court filings contained fabricated authority. Yet the appellant's brief he filed contained another fabricated citation and multiple unsupported citations—and when defendant identified those problems in his responsive brief, plaintiff's counsel did not so much as acknowledge the problem in the reply brief he subsequently filed, which *otherwise* responded to defendant's arguments. Months later, counsel represented that he had adopted verification protocols—in a filing that *repeated* the same kind of verification failure.

This sequence demonstrates counsel's repeated carelessness regarding his independent duty to verify the legal authorities submitted to the courts. Under MCR 1.109(E)(5), an attorney's signature on a filing certifies that "he or she has read the document" and that, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law." "The reasonableness of the inquiry is determined by an objective standard," meaning "[t]he attorney's subjective good faith is irrelevant." *Attorney General v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003). "The requirement of 'reasonable inquiry' is obviously intended to impose a burden on pleaders not to make inaccurate assertions innocently but carelessly . . . . Although made in good faith, a mistaken legal argument may not satisfy the 'formed after reasonable inquiry' requirement, which by its terms qualifies all of the subrule." 1 Longhofer & Quick, Michigan Court Rules Practice, Text (8th ed), § 1109.8, p 69.

Michigan has no specific caselaw regarding the consequences for fabricated or unsupported legal authority generated through the misuse of artificial intelligence, but federal caselaw provides useful guidance. Because MCR 1.109(E) is ultimately based on FR Civ P 11, "[a] body of case law has developed under FR Civ P 11 that may be used as guidance by the Michigan courts in applying MCR 1.109(E)(6)."[1] Longhofer & Quick, § 1109.9, p 70.

---

[1] The signature rules in MCR 1.109(E) are, in relevant part, a recitation of the former MCR 2.114. The amendment adding that language to MCR 1.109(E) "move[d] existing language into MCR 1.109 as a way to, for the first time, include most filing requirements in one single rule, instead of scattered in various rules." MCR 1.109, 501 Mich cclxxviii, cccx (staff comment). See also *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 707 n 9; 950 NW2d 502 (2019) ("MCR 2.114 was repealed, effective September 1, 2018, and substantially relocated to current MCR 1.109(E)."). Former MCR 2.114, in turn, was "based on . . . FR Civ P 11." MCR 2.114, 419A Mich 36, 38 (staff comment). See also *Fisher v Detroit Free Press, Inc*,

Federal courts, in turn, have consistently held that an attorney who files a signed pleading containing hallucinated or otherwise erroneous citations produced through reliance on artificial intelligence violates FR Civ P 11. "Relying on generative AI or citing authorities that do not, in fact, exist subjects a person to sanctions under Rule 11." *Nixon v Ken Ganley Ford West*, 798 F Supp 3d 770, 778 (ND Ohio, 2025). See also *Wadsworth v Walmart Inc*, 348 FRD 489, 495 (D Wyo, 2025) ("[U]sing a fake opinion to support an argument is a violation of Rule 11(b)(2)."). Even where an attorney has "readily admitted" to such a mistake, it does not change that they have "fail[ed] to make the 'reasonable inquiry' required by Rule 11." *Benjamin v Costco Wholesale Corp*, 779 F Supp 3d 341, 348 (ED NY, 2025). See also *Hardy v Whitaker*, ___ FRD ___, ___ (ED Mich, 2026).

We join these other jurisdictions and hold that counsel's submission of fabricated and unsupported authority violated the duty of reasonable inquiry required by MCR 1.109(E)(5). Counsel cited fabricated authority in a motion for a protective order, cited fabricated authority again in a motion for a new trial or evidentiary hearing, and then cited fabricated authority a third time in plaintiff's brief on appeal.[2] He also cited real cases for propositions they do not support, invoked criminal constitutional protections in a civil medical malpractice action, failed to timely correct a fabricated appellate citation after defendant identified it, and eventually filed a Notice of Correction that itself attributed quotations and propositions to cases that did not contain them.

Counsel's explanation does not excuse the violation. Artificial intelligence may be a useful tool for legal research and drafting, but the use of such technology does not alter an attorney's professional obligations. Lawyers remain responsible for the filings they sign and submit. They must verify that cited authorities exist, read the authorities on which they rely, and ensure that those authorities support the propositions asserted. Counsel's repeated reliance on artificial intelligence without meaningful verification, despite having been alerted more than once that his filings contained fabricated authority, fell below that standard.

## B. APPROPRIATE SANCTION

Counsel's conduct burdened both defendant and this Court. Defendant was required to expend resources identifying and responding to fabricated citations, unsupported authorities, and arguments grounded in inapplicable criminal doctrine. This Court, in turn, was required to expend judicial resources disentangling plaintiff's arguments from authorities that either did not exist or did not say what counsel represented them to say. We therefore consider the appropriate sanction.

---

158 Mich App 409, 417; 404 NW2d 765 (1987); *Briarwood v Faber's Fabrics, Inc*, 163 Mich App 784, 792-793; 415 NW2d 310 (1987). The Supreme Court has since adopted a new version of MCR 2.114, which addresses the unrelated topic of certain proceedings under the Uniform Public Expression Protection Act, MCL 691.1851 *et seq*.

[2] We discuss the trial court filings not as an independent basis for appellate sanctions, but because they show that counsel was on notice before filing the appellate brief that his filings contained fabricated authority.

Under MCR 7.216(C)(1)(b), this Court may "assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because" a brief filed on appeal "was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court." Counsel's brief violated MCR 1.109(E)(5) and grossly disregarded the requirements of fair presentation by relying on fabricated authority, unsupported citations, and inapplicable criminal doctrine. Sanctions are therefore authorized under MCR 7.216(C)(1)(b).

Sanctions are also required under MCR 1.109(E)(6). When a document is signed in violation of MCR 1.109(E)(5), the court "shall impose . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." MCR 1.109(E)(6). Because "the sanctions provided for by MCR [1.109(E)(6)] are mandatory" once a violation is found, *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008), we must determine the appropriate sanction.

No published Michigan decision addresses the appropriate sanction under MCR 7.216(C)(1) or MCR 1.109(E)(6) for an attorney's submission of fabricated or unsupported legal authority resulting from the misuse of generative artificial intelligence. Courts in other jurisdictions, however, have recognized that such conduct may warrant monetary sanctions, including reasonable attorney fees incurred to identify and respond to the fabricated authority.[3]

---

[3] See, e.g., *Whiting v City of Athens*, 170 F4th 455, 458, 466-467 (CA 6, 2026) (imposing reasonable attorney fees, double costs, and $15,000 in individual punitive sanctions against each attorney for briefing that "repeatedly misrepresented the record, cited non-existent cases, and cited cases for propositions of law that they did not even discuss, much less support"); *Fletcher v Experian Info Solutions, Inc*, 168 F4th 231, 233 (CA 5, 2026) (imposing a $2,500 sanction for briefing that contained fabricated quotations and unsupported legal propositions); *Amarsingh v Frontier Airlines, Inc*, unpublished order of the United States Court of Appeals for the Tenth Circuit, issued February 9, 2026 (Case No. 24-1391), pp 1, 5 (imposing monetary sanctions and referring counsel to attorney disciplinary authority when briefing included "citations to nonexistent cases and attribution of propositions or quotations to two real cases that did not stand for the propositions or contain the quotations"); *Mata v Avianca, Inc*, 678 F Supp 3d 443, 466 (SD NY, 2023) (imposing a $5,000 sanction and requiring counsel to send "a letter individually addressed to each judge falsely identified as the author of the fake . . . opinions"); *Ringo v Colquhoun Design Studio, LLC*, 345 Or App 301, 306; 582 P3d 695 (2025) (imposing sanctions of "$500 for each false citation, and $1,000 for each false quotation or statement of law"); *Couvrette v Wisnovsky*, order of the United States District Court for the District of Oregon, issued December 12, 2025 (Case No. 1:21-cv-00157-CL), pp 1, 15, and later order issued March 23, 2026, p 5 (imposing a $15,500 sanction and later awarding $94,704.38 in attorney fees and costs after filings contained nonexistent cases and fabricated quotations falsely attributed to legitimate authorities); *ByoPlanet Int'l, LLC v Johansson*, 792 F Supp 3d 1341, 1358 (SD Fla, 2025), and later order issued August 1, 2025 (Case Nos. 0:25-cv-60630, 0:25-cv-60646, 0:25-cv-60647, and 0:25-cv-60712), p 4 (referring counsel to the Florida Bar for appropriate discipline and later ordering counsel to pay $85,567.75 in attorney fees after counsel submitted fabricated quotations and a nonexistent case).

Courts have also imposed nonmonetary sanctions for similar conduct, including striking briefs, dismissing appeals, reprimanding attorneys, and referring counsel for disciplinary review.[4]

Under MCR 7.216(C)(2), defendant may recover "actual damages and expenses incurred . . . because of the vexatious appeal or proceeding, including reasonable attorney fees." We remand to the trial court for a determination of those damages. On remand, the trial court shall conduct an evidentiary hearing to determine the actual damages, including reasonable attorney fees, that were incurred as a direct result of this vexatious appeal. After determining the extent of the damages, the sanction is to be paid by plaintiff's counsel personally.

## IV. CONCLUSION

We affirm the trial court's order denying plaintiff's motion for a new trial or evidentiary hearing. We further conclude that counsel's repeated submission of fabricated and unsupported authority violated MCR 7.216(C)(1) and MCR 1.109(E)(5). We therefore remand for the trial court to determine the actual damages and expenses, including reasonable attorney fees, that defendant incurred because of this appeal. See *Dillon v DeNooyer Chevrolet Geo*, 217 Mich App 163, 170; 550 NW2d 846 (1996). We do not retain jurisdiction, but we direct the Clerk of this Court to forward this opinion to the Attorney Grievance Commission for possible investigation.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[4] See, e.g., *Park v Kim*, 91 F4th 610, 612 (CA 2, 2024) (referring counsel to an attorney grievance panel and directing counsel "to furnish a copy of th[e] decision to her client" after counsel cited a nonexistent case); *McCarthy v United States Drug Enforcement Admin*, 171 F4th 245, 248, 251-252 (CA 3, 2026) (reprimanding counsel for submitting "a meritless legal argument" that "relied upon non-existent authority or was wholly unsupported by the adjudications cited" and noting that future violators may face additional sanctions); *Grant v City of Long Beach*, 96 F4th 1255, 1257 (CA 9, 2024) (striking a brief and dismissing an appeal where the brief relied on nonexistent cases and misrepresented existing authorities); *In re Nwaubani*, unpublished opinion of the United States Court of Appeals for the Fourth Circuit, issued March 11, 2026 (Case No. 25-9517), pp 1-2, 5 (publicly admonishing counsel for briefing that cited nonexistent cases).